**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **Plaintiff,** | |
| v. | Case No. 07 CR 410-12 |
| **DAWNYA PARKER,** | Hon. Harry D. Leinenweber |
| **Defendant.** | |

**MEMORANDUM OPINION AND ORDER**

**I. BACKGROUND**

This case is proceeding on a superceding indictment that was handed down on December 13, 2007, against 22 defendants, including Dawnya Parker (hereinafter, "Parker"), charging a drug conspiracy and possession of fire arms to advance the conspiracy. Prior to the original indictment in this case, the United States Attorney's Office (hereinafter, the "Government") filed Title III applications seeking a telephone tap on cell phone no. 773-640-8809, supported by all necessary authorizations and including a 49-page affidavit by Brent Williams setting forth the factual bases for the application. One of the named interceptees was Dawnya Parker. Based on this application on May 21, 2007, Chief Judge James Holderman authorized the wire tap. On June 21, 2007, the Government sought a 30-day extension of the wire tap on phone no. 773-640-8809 as well as a new wire tap on cell phone no. 773-889-8742. Again one of the named interceptees was Dawnya

Parker. The new applications again contained all necessary authorizations and were supported by a 56-page affidavit of Gerald Pointer. Chief Judge Holderman authorized both the extension and the new wire tap.

The Defendant Parker has moved to suppress the Title III material based on alleged shortcomings of the two affidavits, contending that neither established the necessity as required by the statute and both relied on boilerplate recitations rather than "real" facts. She also contends that the Government, contrary to the orders of authorization did not take steps to minimize the intrusive nature of the wire taps. The Government responds by arguing that the affidavits adequately established necessity and the taps were minimized although it points out that none of the calls alleged to have violated the minimization order involved Parker.

## II. **DISCUSSION**

Title 18, Section 2518, U.S.C.A., authorizes a judge of competent jurisdiction to authorize wire taps based on the submission of an application containing certain statutorily required information. Among the required information as set forth in Section 2518(1)(c):

> (c) a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonable appear to be unlikely to succeed if tried or to be too dangerous.

Because Parker relies on the alleged failure to plead necessity properly in the application the Court will turn to each application in turn.

First, it will be helpful to review the Seventh Circuit case law on the subject. First, the requirements of Section 2518(1)(c) are listed in the alternative so that the Government need establish only one of the three reasons. *U.S. v. Fudge*, 325 F.3d 910, 918 (7th Cir., 2003). The burden of proving necessity is not high and must be viewed in a practical and common sense fashion. *Fudge* at 919. Use of wire taps must not be the first resort but need not be the last resort. *Fudge*, 325 F.3d at 919. The application, of course, cannot be mere boilerplate conclusions but must set forth facts to enable the court to make a reasoned determination of the necessity. The finding of necessity is reviewed under an abuse of discretion standard. *U.S. v. Zambrana*, 841 F.2d 1320, 1329-30 (7th Cir., 1988).

With these principles in mind we examine the affidavits. In support of the original application for a tap on 773-640-8809, DEA Special Agent, Brent D. Williams, stated that he had been employed in that capacity for three years and had received specialized training in and been personally involved in narcotics investigations of drug trafficking organizations. The information in his affidavit came from his own participation as well as results of other forms of investigation including physical surveillance,

telephone pen registers, trap and trace records, consensual recorded conversations, lab reports, NCIC records, oral discussions with law enforcement officers, and information from confidential informants.

As a result of this investigation he was aware that Calvin Buffington was the leader of a large scale drug trafficking organization that was made up of family members and lifelong friends and that the target cell phone was issued to him. Based on phone records and pen registers, the target phone had been used hundreds of times with known members of the DTO over a five-month period. The proposed wire tap was needed because the methods of investigation utilized to that date had not been successful in determining the full scope of the drug organization, or in identifying suppliers, customers, stash locations, management of process, and routes that the narcotics and proceeds were taking. While some drug seizures had taken place, these seizures did not disclose the sources or the potential customers of the drug organization. Physical and residential surveillance had been tried, but without prior knowledge of time and place of meeting, it was a hit or miss exercise. If excessive time was spent on surveillance, suspicions of the organization members might be aroused. Grand Jury subpoenas would face a Fifth Amendment problem in obtaining useful testimony and would be much more effective if greater knowledge of an individual's participation was known and

telephone taps would help in gaining this knowledge. Cooperating individuals had already been effectively used in the investigation, but telephone evidence was needed to corroborate their testimony and to counter expected impeachment (the cooperators had long criminal records and were paid informants – which would be great fodder for cross-examination). Interviews of participants had been tried but their usefulness was weakened by false leads which the taps would help corroborate or disprove. Searches by warrant would be aided by providing information upon which to base a request for a warrant. A pole camera had been used but the only feasible location offered only a limited view. Pen registers had been used and the results provided a basis for the request for a telephone tap.

It is clear based on the foregoing that the factual support for the application was as least as extensive as was present in *United States v. Fudge*. The wire taps were certainly not the initial steps in this investigation. Many if not all of the possible investigative techniques had been used with limited success. While the confidential informants had given the Government much valuable information as to the scope and extent of the organization, nevertheless, it is important to remember that the Government must prove its case beyond a reasonable doubt against each of the defendants and it is extremely important that the Government obtain corroborating evidence so that the

cooperating witnesses, if needed to testify, could successfully withstand cross-examination.

The request for the extension of the tap on 773-640-8809 and the application for a tap on 773-899-8724 was based on the same information that formed the original application for the tap on 773-640-8809 plus information obtained from the taps and pen registers to 773-899-8724, which showed that the latter was used in conversation with alleged members of the DTO several hundred times. Also the taps demonstrated that Calvin Buffington was using multiple cell phones to conduct the drug business. Thus, the necessity demonstrated for the initial tap is certainly valid for proving necessity for both the extension of the tap on 773-640-8809 and for the tap on 773-899-8724. In short, it is not improper for the Government to ask for and obtain wire taps to shore up its case against the known individuals and to attempt to find out unknown members of the organization, its suppliers and customers.

Parker also argues that the Government failed in its obligation to minimize the monitoring to avoid listening in on unrelated communications. While this is a requirement, nevertheless, the eavesdroppers are to be given a certain amount of latitude depending on the kind and scope of the criminal enterprise. *U.S. v. Mansoori*, 304 F.3d 635, 647 (7th Cir., 2002). Here, as the Government points out, the conspiracy involved family members and close friends. Consequently, it could reasonably be

expected that the conspirators might include non-drug-related matters in conversations involving the drug organization. Moreover, the Government submitted progress reports as required to the Chief Judge and almost all calls that were subject to minimization consisted of three minutes or less which has been suggested are not violations of the minimization requirement. *See, Mansoori*, p. 647. Moreover, the appropriate relief would be to suppress the specific conversation inappropriately monitored. *U.S. v. Mares-Martinez*, 240 F.Supp.2d 803, 816 (N.D. Ill., 2002) and it is noteworthy that none of the alleged non-minimized calls involved Parker.

### III. CONCLUSION

For the reasons stated herein, the Defendant's Motions to Suppress are denied.

**IT IS SO ORDERED.**

                                                                                           /s/ Harry D. Leinenweber
                                                                                          Harry D. Leinenweber, Judge
                                                                                          United States District Court

**DATE:** August 12, 2008